THE PEOPLE OF THE STATE OF NEW YORK ex rel. SEA INSURANCE CO., LTD., Respondent, against MARK GRAVES et al., Constituting the State Tax Commission, Appellants.

Argued April 20, 1937; decided May 25, 1937.

*John J. Bennett, Jr., Attorney-General (Wendell P. Brown* of counsel), for appellants. The premiums by which the additional tax has been measured were premiums charged for business done in this State and were properly used as a base for the additional assessment. (*Mutual Safety Ins. Co.* v. *Hone,* 2 N. Y. 235; *London Assur. Corp.* v. *Thompson,* 170 N. Y. 94; *Morris & Co.* v. *Skandinavia Ins. Co.,* 279 U. S. 405; *Palmetto Ins. Co.* v. *Conn,* 272 U. S. 295; *Campania De Tabacos* v. *Collector,* 275 U. S. 87; *Equitable Life Assur. Society* v. *Pennsylvania,* 238 U. S. 143; *People ex rel. Kirkman* v. *Van Amringe,* 266. N. Y. 277; *People* v. *Thames & Mersey Marine Ins. Co.,* 176 N. Y. 531.)

*John C. Crawley, Archibald G. Thacher* and *A. Chalmers Charles* for respondent. The relator's New Jersey contract with the other insurance companies was for reinsurance only. (*Morris & Co.* v. *Skandinavia Ins. Co.,* 279 U. S. 405; *Mercantile Ins. Co.* v. *State Ins. Co.,* 25 Barb. 319; *Gledstanes* v. *Royal Assurance Co.,* 5 B. & S. 797; *Boston Ins. Co.* v. *Globe Fire Ins. Co.,* 174 Mass. 229;

*Allgeyer* v. *Louisiana,* 165 U. S. 578; *Ætna Life Ins. Co.* v. *Dunken,* 266 U. S. 389; *People ex rel. Kirkman* v. *Van Amringe,* 266 N. Y. 277; *Stone* v. *Penn Yan, K. P. & B. Ry. Co.,* 197 N. Y. 279; *Federal & Deposit Co.* v. *Tafoya,* 270 U S. 426.) The asserted tax would be invalid. (*People ex rel. P. S. L. Assur. Soc.* v. *Miller,* 179 N. Y. 227; *Equitable Life Assur. Society* v. *Pennsylvania,* 238 U. S. 143.)

HUBBS, J. The question presented is whether the relator, Sea Insurance Company, a foreign insurance company, was doing a marine reinsurance business in this State, and, therefore, subject to a tax under section 187 of the Tax Law (Cons. Laws, ch. 60). The relator is an English company. Chubb & Son, a copartnership, of New York is its general agent. That firm is also general agent of several other insurance companies including the Hartford and Federal. All of the companies represented by Chubb & Son entered into an agreement to reinsure a certain percentage of any line taken by any one of the companies, parties to the agreement. The agreement was entered into in the State of New Jersey where the relator had an office for the transaction of business. The Hartford and Federal did business directly with the parties insured in New York. On such business done in New York, the relator by virtue of the contract entered into in New Jersey became a reinsurer for the percentage of the lines specified in the contract of reinsurance. Its portion of the premiums collected for the business written in New York by the Hartford and Federal was paid to the relator at its office in New Jersey. The Hartford and Federal paid the tax assessed against them in New York under section 34 of the Insurance Law (Cons. Laws, ch. 28) based on the premiums collected on business which they did directly with parties insured in New York. The Tax Commission assessed the relator on the amount paid to it by checks sent to it in New Jersey by the Hartford and Federal for its charge for reinsurance on the business written by the Hartford and Federal directly in New York.

The question here is, can such a tax for the privilege of doing business in New York be legally assessed against the relator? That depends upon whether the relator did business in New York. Was it in any way a party to the insurance contracts entered into in New York by the Hartford and Federal Insurance Companies directly with the parties to whom they issued policies? In actual practice, a line of insurance is frequently offered larger than any one company may desire to assume. In such a case one method is to accept the line offered and reinsure the whole or a part of it with some other company or companies.

The contract made by the original insurance company with the other company or companies for its protection as to the whole or a portion of the risk is known as a reinsurance contract.

" The contract that one insurer makes with another to protect the first from a risk he has already assumed." (*Iowa Life Ins. Co.* v. *Eastern Mut. Life Ins. Co.*, 64 N. J. L. 340, 348; *London Assur. Corp.* v. *Thompson*, 170 N. Y. 94, 99.)

Of that form of reinsurance contract, SANFORD, J., in *Hone & Bokee* v. *Mutual Safety Ins. Co.* (1 Sandf. 137, 145; affd., 2 N. Y. 235), said: " for more than two centuries, the contract of re-assurance has been well known, and its principles firmly established * * *. The contract of re-assurance is described as a contract of indemnity to the party obtaining it."

That practice is the usual practice and a contract so made is known as reinsurance. There is, however, another practice by which two or more companies enter into an agreement by which they agree that each will and does in advance reinsure any line taken by any one of the companies in the future to an amount equal to a certain per cent of the line taken by that one of the original insuring companies. To illustrate, the Home, Ætna and Hartford may agree that each will reinsure one-third of any line taken by each of the others. That

is reinsurance in advance. The obligation attaches automatically upon the acceptance of a risk by any one of the three companies. The contract is a self-executing contract. It may provide and usually does that upon acceptance of a risk by one of the companies, notice shall be given to each of the reinsuring companies including a survey and a statement of all necessary information in regard to the risk. That was the method employed in the case at bar. (9 Cooley, Briefs on the Law of Insurance [2d ed.], pp. 6741–6760; *Imperial Fire Ins. Co.* v. *Home Ins. Co.*, 68 Fed. Rep. 698.)

The agreement for the latter type of reinsurance is sometimes called a " reinsurance compact." (*German American Ins. Co.* v. *Commercial Fire Ins. Co.*, 95 Ala. 469; 16 L. R. A. 291.)

It is also known as " open policy or contract of reinsurance." (*Continental Ins. Co.* v. *Ætna Ins. Co.*, 139 N. Y. 16.)

The similarity between the two types of reinsurance contracts is of importance because of the contention by appellant that reinsurance in the case at bar was effected when the principal risks insured directly in New York by the Hartford and Federal resulted in premiums being paid by those companies to relator. The appellants concede that where a risk is written in New York and a reinsurance policy covering the particular risk is written in another State, the business of reinsurance is done in the State where the reinsurance policy is written and hence that such a transaction would not be taxable as business done in the State of New York under section 187 of the Tax Law. If the Federal accepted a line of $10,000 on a risk in New York and separately reinsured fifty per cent of the risk with the relator in New Jersey, the place of business of the reinsurance company would be New Jersey and it would not be taxable in New York as it, under those facts, would not be doing business in New York. It would have no contract relation with the owner of the property insured in New York by the Federal. Its only contract would be with the Federal and that

contract would be a New Jersey contract. So here, if separate reinsurance contracts had been entered into between the Hartford and Federal and the relator in New Jersey, the relator would not be subject to the tax assessed. Does the fact that the reinsurance liability was assumed by one contract made in advance in New Jersey instead of by separate reinsurance contracts entered into for each original risk change the rule of law applicable? We think not. True it is that no liability as to a specific risk attached under the general reinsurance contract until either the Hartford or Federal accepted a risk in New York when the liability as between the Hartford and Federal and relator attached automatically. But it attached not because the risk had been accepted in New York but because of the terms of the contract entered into in New Jersey. It is suggested that the acceptance of risks directly by the Hartford and Federal in New York constituted doing business in New York by the relator; that the direct insurance contracts entered into in New York by the Hartford and Federal added life to the existing reinsurance contract entered into by relator and made it a party to the contracts entered into in New York by the Hartford and Federal so that it became a party to the business done in New York; but the parties insured directly in New York had no contract with relator and could not enforce the reinsurance contract against it in case of loss. That company was a stranger in fact and in law to the parties insured under the New York contracts made with the Federal and Hartford. In the event of a loss on a policy issued by the Hartford in New York, the insured looked to the Hartford alone and the latter would look to the relator under its New Jersey contract for the portion of the loss which it had reinsured. No act of the original insured brought the reinsurance contract into effect. The insured would not even know that a reinsurance contract existed. (*Morris & Co.* v. *Skandinavia Ins. Co.*, 279 U. S. 405.)

The premiums received by relator were contracted for in New Jersey and were received there. Its capacity to

make and perform its contract was not derived from the laws of New York. (*Alaska Packers Assn.* v. *Industrial Accident Commission,* 294 U. S. 532, 540.)

Appellants rely upon the case of *Palmetto Fire Ins. Co.* v. *Conn* (272 U. S. 295). That case has no application. The Palmetto Insurance Company of South Carolina made a contract in Michigan with the Chrysler Automobile Company to insure the owner of each automobile purchased from the Chrysler Company. Automobiles were sold in Ohio and the insurance company sent to each purchaser a certificate of insurance covering the automobile so purchased. The question was whether the insurance company was doing business in Ohio. It was held that it was. In that case, there arose a direct contract of insurance between the purchasers of the automobiles and the insurance company, so that in case of loss the owners of the automobiles so insured had a direct claim against the insurance company. In the case at bar the situation was exactly the opposite. In case of loss the party insured would never know of the reinsurance contract. In that case Justice HOLMES said: " Manifestly, there was nothing in the contract between the plaintiff [insurance company] and the Chrysler Sales Corporation, without more, that Ohio could lay hold of, even if it insured property in Ohio." That statement is applicable to the facts in this case. Justice HOLMES then went on to point out that there was more and, therefore, that the insurance company was doing business in Ohio. The same principle controlled the decision in the Philippine Island case (*Compania General DeTabacos* v. *Collector of Internal Revenue,* 275 U. S. 87) and the Equitable Life case (*Equitable Life Assur. Soc.* v. *Pennsylvania,* 238 U. S. 143). (Cf. *People ex rel. Kirkman* v. *Van Amringe,* 266 N. Y. 277.)

The order should be affirmed, with costs.

CRANE, Ch. J., LEHMAN, O'BRIEN, LOUGHRAN. FINCH and RIPPEY, JJ., concur.

Order affirmed.