HOOPESTON CANNING Co., a Corporation, E. PRITCHARD, INC., a Corporation, LANSING B. WARNER, INCORPORATED, a Corporation, HARRY M. BROWN and JAMES T. SMITH, Appellants, Respondents, *v.* LOUIS H. PINK, as Superintendent of Insurance of the State of New York, and JOHN J. BENNETT, JR., as Attorney-General of the State of New York, Respondents, Appellants.

HOOPESTON CANNING Co., a Corporation, E. PRITCHARD, INC., a Corporation, LANSING B. WARNER, INCORPORATED, a Corporation, PAUL E. EMERSON and BEN A. MORTON, Appellants, Respondents, *v.* LOUIS H. PINK, as Superintendent of Insurance of the State of New York, and JOHN J. BENNETT, JR., as Attorney-General of the State of New York, Respondents, Appellants.

(Consolidated Actions.)

Third Department, July 2, 1941.

*Wiswall, Walton, Wood & MacAffer; Zane, Trueblood & Johnson,* associate attorneys [*Franklin D. Trueblood* and *Carl O. Olson* of counsel], for the plaintiffs.

*John J. Bennett, Jr., Attorney-General* [*Henry Epstein, Solicitor-General; Vincent Kiebala, Assistant Attorney-General,* of counsel], for the defendants.

FOSTER, J.   The plaintiffs in these actions, for themselves and in their representative capacity, challenge the constitutionality and application of certain portions of the Insurance Law of this State sought to be applied to their method of exchanging contracts of inter-insurance.   (Insurance Law, §§ 130, 168, 410, 412, 413, 415, 417, 418, 421, 422.)   The actions were consolidated before trial and the court below has rendered a declaratory judgment in favor of the plaintiffs as to certain parts of the statute, and against them as to other provisions.   Plaintiffs and defendants have appealed from those provisions of the judgment which are contrary to their respective contentions.   The controlling issues may be stated as follows: (1) Are plaintiffs engaged in doing any insurance business in the State of New York; and (2) if so, do the statutes in question provide a reasonable regulation of such business.

These cases involve two different groups, those engaged in the canning industry, who insure between themselves, and those engaged in the wholesale grocery business and allied lines, who do likewise.   Both groups obtain insurance coverage against loss or damage by fire, and similar hazards, by substantially the same methods, although one group operates through what is called the Canners Exchange and the other through the Warner Reciprocal Insurers.   Lansing B. Warner, Inc., an Illinois corporation, acts as attorney in fact for both groups.   The persons, firms and corporations insured are referred to as subscribers, and they exchange reciprocal contracts among themselves, as both *insured* and *insurers,* through the medium of the attorney in fact.   All of the subscribers are *insurers* of all risks.   Prospective subscribers are required to apply for coverage in writing, and to appoint Lansing B. Warner, Inc., as attorney in fact to act for them in the exchange of insurance. The office of this corporation is in the city of Chicago, and it has no office elsewhere.   It maintains an underwriting department which employs trained insurance engineers to procure data with respect to prospective risks, and who consult with subscribers as to methods calculated to diminish hazards.   The attorney in fact receives applications from prospective subscribers at its office in Chicago, and has the power to accept or reject an applicant although it may have the advice of the committee in that regard. It issues policies there, and upon the receipt of a policy the sub-

scriber sends to it a sum of money which is called a deposit. The amount of this is determined by the attorney in fact, who takes into consideration the risk, amount and character of insurance, but it usually conforms to the premium charged by a stock insurance company for a similar risk. This deposit is recorded in the separate account of each subscriber, and held to secure any liability arising out of the exchange of contracts. This liability consists of a subscriber's proportionate share of losses and expenses, determined in the case of the Canners group in the ratio that the amount of insurance bears to the total insurance of all subscribers, and in the Warner group in the ratio that the subscriber's deposit bears to the total deposits. The attorney in fact is authorized to adjust, compromise and settle all claims for losses, to give and receive notice, defend suits, and to appoint a statutory agent in any State or Territory for the service of process. It receives as compensation for this service twenty per cent of the deposits, out of which it must pay all expenses of operation, except taxes and counsel fees. In the Warner group it receives as additional compensation onefifth of the credit balance left after all losses and expenses are paid. A reserve fund is built up by allocating thereto in the case of each subscriber a portion of the unused deposit. The balance of the deposit is returned to the subscriber at the end of each year as a saving. The reserve fund, if not used, is returned to the subscriber after insurance is discontinued.

The power of attorney provides for the appointment of five advisers from among the subscribers, who meet periodically at the office of the attorney in fact, but these advisers do not function as a body and do not have ultimate power in the control and management of the affairs of the subscribers. It also provides that all contracts of insurance are to be made in the office of the attorney in fact at Chicago. The proof indicates that where an applicant is accepted a contract of inter-insurance, which is in the form of a standard fire insurance policy adapted for reciprocal insurance, is delivered to the subscriber by placing it in the mails at the office of the attorney in fact in the city of Chicago. The proof also shows that most of the contracts are delivered to those who have been subscribers for many years, and that the power of attorney from each is executed but once and continued in force until revoked. The cost of reciprocal insurance provided by this method is from thirty to fifty per cent lower than it would be if the subscribers purchased their insurance from standard companies engaged in the business of insurance. Two reasons are given for this economy. The subscribers, as inter-insurers, insure themselves at actual cost without the use of an expensive agency system

which is commonly employed by stock companies. Also the loss ratio appears to be far lower than that of the ordinary stock companies, and this is said to be due to the care with which subscribers are accepted.

It is clearly apparent from the foregoing that the agreements or policies issued by the attorney in fact are contracts of insurance. (*People* v. *Roschli*, 275 N. Y. 26; *Thomas Canning Co.* v. *Canners Exchange*, 219 Mich. 214; 189 N. W. 214.) It follows that plaintiffs are engaged in the insurance business. The question is whether they are engaged in this business in the State of New York.

Both the Canners Exchange and the Warner Reciprocal Insurers applied to the Superintendent of Insurance of the State of New York in 1930 for a license to transact business in this State as inter-insurers, and their licenses have been renewed from time to time. However, the mere issuance of a license raises no presumption that the licensee is doing business within the State, or that the latter has power to regulate. (*People ex rel. Sea Ins. Co.* v. *Graves*, 274 N. Y. 312.)

Aside from exhibits, the evidence at the trial as to this issue was limited to the testimony of a single witness, the vice-president of the attorney in fact. From his testimony these facts appear. New subscribers usually apply through the recommendation of one already insured. An investigator or engineer, who travels out of the Chicago office, calls upon the prospective subscriber and investigates the risk. He does not solicit but he may explain the plan. His opinion is sought by the attorney in fact as to whether or not a prospective subscriber is eligible. The report of the investigator is made to the Chicago office. Data concerning the credit standing of the prospect and moral qualifications is secured from banks and subscribers in this State. The investigator or insurance engineer may give the prospect a blank form of application and power of attorney; at least there is no rule against such a practice. This application and power of attorney, however delivered, may be, and frequently is, executed where the applicant resides and where the risk is located. After a policy is executed the insurance engineers service the risk by advice as to how the same may be minimized. If there is a substantial loss an appraisal of the loss is made at the site of the property, and the loss is then paid on the basis of such appraisal, but at the Chicago office.

Coupled with the acts indicated in this recital, which may and do take place in this State, there is evidence that the transactions involved are not isolated and sporadic, but show a substantial and continuous course of business. Thus the net deposits of the Canners Exchange upon risks in this State rose from $105,786.86 in the year 1931 to the sum of $298,284.57 in the year 1938; and

during the same period the deposits of the Warner Reciprocal Insurers rose from $28,529.88 to $95,162.82. Losses paid by the Canners Exchange for the same period upon such risks exceeded $600,000, and for the Warner group the figure was more than $110,000.

Do these facts support the conclusion that plaintiffs are engaged in the business of insurance in this State, as contrasted to the mere insurance of risks located within the State? We think the answer must be in the negative. Applications are received, policies are issued and losses are paid in the State of Illinois. There are no resident agents in the State of New York, nor is any representative of the plaintiffs, resident or otherwise, empowered to receive an application, issue a policy, adjust or pay a loss within the confines of this State. Doing business, according to the commonly accepted meaning of the term, must embrace the power to solicit or the power to bind, or both. These elements are lacking in this case, for plaintiffs project no such authority within the limits of this State. The acts of plaintiffs' agents are limited to only an explanation of the plan, not solicitation; an investigation of the risk, and the appraisal of any loss. These acts are wholly consistent with the right of a resident to secure a foreign contract of insurance, a right which is supported by an impressive array of authorities. (*Allgeyer* v. *Louisiana*, 165 U. S. 578; *St. Louis Compress Co.* v. *Arkansas*, 260 id. 346; *Ætna Life Ins. Co.* v. *Dunken*, 266 id. 389; *Minnesota Association* v. *Benn*, 261 id. 140; *People ex rel. Kirkman* v. *Van Amringe*, 266 N. Y. 277; *U. S. Mortgage & Trust Co.* v. *Ruggles*, 258 id. 32; *Stone* v. *Penn Yan, K. P. & B. Railway*, 197 id. 279.) If this right may be abridged merely because of the inspection of risks and appraisal of losses here, then it is a right in theory only and of no practical value. The cases cited, however, emphasize the fact that situs does not confer upon the State the power to regulate. The necessary corollary to this doctrine is that inspections and appraisals, which have to do with the situs, do not confer such jurisdiction. This doctrine of course does not apply where a foreign corporation has an agent within this State authorized to represent it for the purpose of doing business. It is then doing business here through its *alter ego*, a situation which does not exist in this case. On the basis of these considerations we reach the conclusion that plaintiffs are not engaged in the business of insurance in this State, and that contracts between them and others, entered into in the State of Illinois, must be governed by the laws of that State. (*People ex rel. Sea Ins. Co.* v. *Graves, supra; Huntington* v. *Sheehan*, 206 N. Y. 486; *Knights Templars' Indemnity Co.* v. *Jarman*, 187 U. S. 197.) It follows that, under the circumstances disclosed, the State of New

York has not the power to regulate the business of plaintiffs, and that statutes which attempt to provide for such regulation are invalid and inapplicable as to them. This conclusion renders it unnecessary to discuss any other issue.

The judgment should be reversed, with costs, and a judgment entered in conformity herewith.

HILL, P. J., CRAPSER and SCHENCK, JJ., concur; BLISS, J., dissents, in an opinion.

BLISS, J. (dissenting). I dissent from the opinion for reversal and vote to affirm the judgment below. I do this principally upon the authority of *International Harvester Company* v. *Kentucky* (234 U. S. 579). As in that case, we have here a continuous course of a large volume of business and business conduct by the appellants over a considerable period of time in the State of New York. We have agents interviewing prospects, explaining the plan, inspecting the property, recommending changes to reduce the risk and even carrying application blanks. These agents obtained the execution of these applications. The payment of the premiums or " deposits," as they are called, is made within the State of New York. The agents of the insurer are within the State, not occasionally but with uninterrupted continuity soliciting and obtaining contracts, servicing the risks and adjusting the losses. The agents then keep in constant touch with the subscribers and give the usual fire insurance service. Also the usual insurance methods are followed as to losses. They are investigated and adjusted here, although payment comes from Chicago, and if no satisfactory adjustment is made suit may be brought in New York. The volume of business thus transacted in New York has been large and has down through the years covered something over 50,000 risks. This all indicates a continuous and steady course of business conduct rather than isolated transactions. We must look to the substance of this insurance business and not merely to its outward form. While there has been a well-prepared attempt to avoid the semblance of doing business within our State, when the nature of the business itself is analyzed it cannot be distinguished from that of any other foreign fire insurance company doing business here.

I, therefore, vote to affirm the judgment below.

Judgment reversed on the law and facts, and judgment may be entered in conformity herewith.

Findings of fact and conclusions of law inconsistent herewith are reversed and disapproved.

Decision and findings may be settled on five days' notice before Mr. Justice FOSTER at Liberty, N. Y.