# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1287**
**CA 10-00545**
PRESENT: SMITH, J.P., PERADOTTO, CARNI, SCONIERS, AND GORSKI, JJ.

---

HAHN AUTOMOTIVE WAREHOUSE, INC.,
PLAINTIFF-APPELLANT-RESPONDENT,

V                                                          MEMORANDUM AND ORDER

AMERICAN ZURICH INSURANCE COMPANY AND
ZURICH AMERICAN INSURANCE COMPANY,
DEFENDANTS-RESPONDENTS-APPELLANTS.

---

THE WOLFORD LAW FIRM LLP, ROCHESTER (MICHAEL R. WOLFORD OF COUNSEL),
FOR PLAINTIFF-APPELLANT-RESPONDENT.

DAMON MOREY LLP, BUFFALO (MICHAEL J. WILLETT OF COUNSEL), FOR
DEFENDANTS-RESPONDENTS-APPELLANTS.

---

Appeal and cross appeal from an order of the Supreme Court, Monroe County (Kenneth R. Fisher, J.), entered June 15, 2009 in a breach of contract action. The order, among other things, granted plaintiff's cross motion for partial summary judgment.

It is hereby ORDERED that the order so appealed from is modified on the law by granting those parts of the motion seeking summary judgment dismissing the second through fourth causes of action and as modified the order is affirmed without costs.

Memorandum: Plaintiff commenced this breach of contract action seeking, inter alia, a determination that bills sent by defendants to plaintiff pursuant to several insurance contracts issued to plaintiff by defendants were time-barred and thus that plaintiff had no duty to pay those bills. In their second amended answer, defendants asserted 19 counterclaims seeking to recover damages for plaintiff's alleged breach of those insurance contracts. Defendants moved for, inter alia, a determination that they were entitled to satisfy any part of plaintiff's outstanding debt from a $400,000 letter of credit previously issued to them by plaintiff, and plaintiff cross-moved for partial summary judgment determining, inter alia, that any amounts sought by defendants in the counterclaims were time-barred. Logically addressing first plaintiff's cross motion, we note that Supreme Court granted those parts seeking dismissal of the counterclaims as time-barred insofar as they sought recovery for debts arising more than six years prior to the commencement of this action. The court also, however, granted that part of defendants' motion seeking a determination that defendants were entitled to satisfy any part of plaintiff's outstanding debt from a $400,000 letter of credit

previously issued to them by plaintiff, notwithstanding the expiration of the statute of limitations.

We reject the contention of plaintiff on its appeal that the court erred in determining that defendants were entitled to apply the letter of credit to all debts, including those that were time-barred. A letter of credit is interpreted in accordance with the same rules that apply to any other contract (*see Venizelos, S.A. v Chase Manhattan Bank*, 425 F2d 461, 465-466), and "[a] familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms. Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing" (*W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162). Contrary to plaintiff's contention, the letter of credit unequivocally permitted defendants to apply the letter of credit to any debts that plaintiff owed to defendants. The letter of credit did not permit plaintiff to direct the particular debt to which the letter of credit should be applied, nor did it prohibit defendants from using the letter of credit to satisfy otherwise time-barred debts. Furthermore, plaintiff provided the letter of credit well before the current controversy arose. Thus, because "the payment in question [was] already in the creditor[s'] possession as security for a debt . . ., the money already belong[ed] to the creditor[s] and [they were entitled to] apply it to the obligation in any manner" that they chose (*Lines v Bank of Am. Nat'l Trust & Sav. Assn.*, 743 F Supp 176, 180 n 2). Contrary to plaintiff's further contention, plaintiff could not set conditions upon the use of the letter of credit after it had been provided to defendants. As previously noted, "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms" (*W.W.W. Assoc.*, 77 NY2d at 162), and the letter of credit at issue specifically stated that it "cannot be modified or revoked without [defendants'] consent."

With respect to plaintiff's contention that defendants could not apply the letter of credit to the debts that arose prior to the expiration of the statute of limitations, we note the well-settled proposition that "[t]he expiration of the time period prescribed in a [s]tatute of [l]imitations does not extinguish the underlying right, but merely bars the remedy . . . Nicely summarized elsewhere, '[t]he theory of the statute of limitations generally followed in New York is that the passing of the applicable period does not wipe out the substantive right; it merely suspends the remedy' " (*Tanges v Heidelberg N. Am.*, 93 NY2d 48, 55; *see Matter of Paver & Wildfoerster [Catholic High School Assn.]*, 38 NY2d 669, 676). Notably, plaintiff does not contend that the debts at issue are not due and owing. Thus, despite the expiration of the statute of limitations with respect to those debts, defendants were entitled to apply the letter of credit to them.

Contrary to the contention of defendants on their cross appeal, however, the court properly concluded that the counterclaims for any debt that arose more than six years prior to the commencement of this

action were time-barred.  The contention of defendants that the claims for those debts did not accrue until they made a demand for payment is without merit.  " 'Where, as here, the claim is for payment of a sum of money allegedly owed pursuant to a contract, the cause of action accrues when the [party making the claim] possesses a legal right to demand payment' " (*Minskoff Grant Realty & Mgt. Corp. v 211 Mgr. Corp.*, 71 AD3d 843, 845; *see Kingsley Arms, Inc. v Copake-Taconic Hills Cent. School Dist.*, 9 AD3d 696, 698, *lv dismissed* 3 NY3d 767; *Albany Specialties v Shenendehowa Cent. School Dist.*, 307 AD2d 514, 516; *Town of Brookhaven v MIC Prop. & Cas. Ins. Corp.*, 245 AD2d 365, *lv denied* 92 NY2d 806).  Thus, in such a case, the statute of limitations "begins to run when the right to make the demand for payment is complete, and the [party making the claim] will not be permitted to prolong the [s]tatute of [l]imitations simply by refusing to make a demand" (*State of New York v City of Binghamton*, 72 AD2d 870, 871).  Here, the court properly determined that the counterclaims for payment of the debts at issue were time-barred because defendants had the right to demand payment for those debts more than six years prior to the commencement of this action.  That conclusion does not, however, prevent defendants from applying the letter of credit, which plaintiff had previously provided to them, to any debt, including those debts that are time-barred, inasmuch as the expiration of the statute of limitations merely bars the remedy but does not extinguish defendants' rights.

We agree with the further contention of defendants on their cross appeal that those parts of their motion for summary judgment dismissing the second through fourth causes of action seeking damages arising from their use of the letter of credit should have been granted.  Indeed, we note that the court properly determined that those causes of action were without merit, but it did not expressly dismiss them.  We therefore modify the order accordingly.

We have considered the remaining contentions of the parties and conclude that they are without merit.

All concur except PERADOTTO, J., who dissents in part and votes to modify in accordance with the following Memorandum:  I respectfully dissent in part.  I cannot agree with the majority that Supreme Court properly determined that defendants' breach of contract counterclaims for any debt that arose more than six years prior to the commencement of the action are time-barred.  Rather, in my view, those counterclaims did not accrue until defendants demanded, and plaintiff refused to pay, premiums and other amounts owed under insurance contracts issued by defendants.  I therefore would further modify the order by denying plaintiff's cross motion and granting those parts of defendants' motion seeking summary judgment determining that none of defendants' counterclaims is barred by the statute of limitations and by dismissing plaintiff's third affirmative defense asserting that the counterclaims in question are time-barred.

The facts of this case are largely undisputed, although I note that the underlying insurance contracts are somewhat complex.  Plaintiff and defendants entered into several contracts for workers'

compensation insurance, general liability insurance, and business automobile insurance from 1992 through 2003. Beginning in 1997, defendants also began providing claim services in connection with automobile physical damage claims for which plaintiff was self-insured. Plaintiff purchased four types of policies that are relevant to this matter: (1) retrospective premium policies, (2) adjustable deductible policies, (3) deductible policies, and (4) claim services contracts. Each of the policies provided for the payment of an initial premium, deductible or fee that was subsequently adjusted based upon actual losses or expenses. Several of the policies were subject to a Retrospective Premium Agreement, pursuant to which plaintiff's initial premiums were based upon estimated exposures and losses under the policies. The premiums were recalculated 18 months after the inception of the policy and annually thereafter, based upon audited exposures and actual claims experience. Plaintiff was required to pay an additional premium if the recalculated premium exceeded the estimated amount, while plaintiff was entitled to a refund if the recalculated premium was below the estimated amount. Of particular relevance to the instant matter, the Retrospective Premium Agreement provided that "*the Insured shall pay to the Company within ten (10) days of receipt of its demand therefor[]*, Earned Retrospective Premium based upon Incurred Losses valued as [o]f a date six (6) months after the expiration of each such period, as soon as practicable after such valuation. Additional Earned Retrospective Premium Adjustments shall be computed by the Company based upon Incurred Losses valued annually thereafter as soon as practicable after such valuation dates, *payable within ten (10) days of receipt of its demand therefor[]*" (emphases added).

The deductible policies were subject to a Deductible Agreement, pursuant to which plaintiff was required to pay a deductible of $250,000 per occurrence or accident, as well as allocated loss adjustment expenses and a variable fee factor. The Deductible Agreement similarly provided for an initial adjustment 18 months after the inception of the policies and then at yearly intervals thereafter. With respect to payment, the Deductible Agreement provided that "*[t]he Insured shall pay to the Company within twenty (20) days of its demand* in the manner set forth in this Agreement: a) All paid losses and all reserves as determined and established by the Company plus an allowance for losses incurred but not reported, within the Deductible Amounts, and b) All payments for Allocated Loss Adjustment Expense made by the Company and all reserves for Allocated Loss Adjustment Expense plus an allowance for expenses incurred but not reported, as established and determined by the Company . . ., and c) All other insurance related expenses, assessments, taxes, fines or penalties which are charged or assessed by any administrative, regulatory or governmental authority or court of competent jurisdiction as a direct liability against any policy listed" in another portion of the Agreement. The Claim Services Contracts likewise provided for the payment of estimated fees during the terms of the agreements, with a final reconciliation to be performed 12 months after the expiration of each agreement. Under those contracts, "[plaintiff]'s payment was then due within [30] days of receipt of the invoice from [defendants]."

In 2005, defendants initiated a "deductible reconciliation program," pursuant to which they reviewed all of their deductible programs and their general ledger to determine whether there were any discrepancies.  During the course of that reconciliation, defendants discovered that they had neglected to bill plaintiff for losses, expenses or fees for which plaintiff was responsible under its business automobile and general liability coverage policies for the policy year from September 30, 1995 through September 30, 1996.  On April 25, 2005, defendants issued an invoice to plaintiff in the amount of $1,123,874.27 based upon loss and expense payments made by defendant beginning September 30, 1995, when the policies in question went into effect.  In early 2006, defendants further discovered that they had failed to bill plaintiff for any of the amounts for which plaintiff was responsible under the Claim Services Contracts.  They thus issued an invoice to plaintiff on March 27, 2006 in the amount of $71,615.71, representing amounts due under those contracts from March 1997 until February 2006.  Plaintiff did not pay either of the invoices.

Defendants also issued two "adjustment" invoices to plaintiff. When a new senior underwriter for defendants assumed responsibility for plaintiff's account in 2005, she learned that plaintiff had not paid any of the 1998, 1999 or 2003 adjustment invoices prepared by defendants.  Plaintiff's insurance agent indicated that plaintiff had not paid any of those adjustments because plaintiff did not understand them.  Defendants' underwriter then voided those three invoices and performed a new adjustment, taking into account losses and expenses incurred from March 31, 1995, the date of the prior undisputed adjustment, through March 31, 2005.  The result was a March 2, 2006 adjustment invoice in the amount of $751,514.  Plaintiff responded to that adjustment invoice by letter, asserting that, "[a]lthough there may be no dispute as to the amounts that have been invoiced by [defendants], it is also evident that these amounts would appear to be uncollectible and that any attempt to collect these amounts through legal proceedings would be barred by the statute of limitations. Therefore, we do not believe that there is any basis for [defendants] to claim that the invoiced amounts are owed by [plaintiff]." Defendants then issued a second adjustment invoice to plaintiff dated June 2, 2006, which reflected adjustments to policies subject to retrospective premium agreements and adjustable deductible policies as of March 31, 2006.  Although the March 31, 2006 adjustment resulted in a refund to plaintiff of $262,480, defendants did not remit that amount to plaintiff inasmuch as plaintiff's outstanding obligations exceeded the amount of its refund.

Plaintiff commenced this breach of contract action seeking, inter alia, a determination that it had no duty to pay the invoices issued by defendants because any claim for the amounts owed was time-barred. In their second amended answer, defendants asserted 19 counterclaims seeking to recover damages for plaintiff's alleged breach of the insurance contracts.  In its reply to the counterclaims, plaintiff asserted various affirmative defenses, including that defendants' counterclaims, in whole or in part, were barred by the statute of limitations.

Thereafter, defendants moved for, inter alia, a determination that plaintiff owed them the amounts set forth in the four invoices and that the statute of limitations did not bar any of their counterclaims. Defendants also sought dismissal of plaintiff's third affirmative defense, in which plaintiff asserted that the counterclaims "are barred, in whole or in part, by the applicable statute of limitations." Plaintiff cross-moved for partial summary judgment determining, inter alia, that any amounts sought by defendants in the counterclaims were time-barred to the extent that they could have been billed to plaintiff more than six years before the commencement of this action. The court granted plaintiff's cross motion, concluding that "the statute of limitations has run as to all claims for which [defendants] had the right to demand payment more than six years prior to the commencement of this action." In my view, that was error.

It is well settled that "[t]he [s]tatute of [l]imitations begins to run once a cause of action accrues (CPLR 203 [a]), that is, when all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court" (*Aetna Life & Cas. Co. v Nelson*, 67 NY2d 169, 175). Thus, "[i]n contract cases, the cause of action accrues and the [s]tatute of [l]imitations begins to run from the time of the breach" (*John J. Kassner & Co. v City of New York*, 46 NY2d 544, 550; *see LaGreca v City of Niagara Falls*, 244 AD2d 862, *lv denied* 91 NY2d 813; *Micha v Merchants Mut. Ins. Co.*, 94 AD2d 835, 835-836).

Supreme Court and the majority herein rely on a line of cases holding that a breach of contract action accrues when the party making the claim possesses a legal right to demand payment (*see e.g. Kingsley Arms, Inc. v Copake-Taconic Hills Cent. School Dist.*, 9 AD3d 696, 698, *lv dismissed* 3 NY3d 767; *Albany Specialties v Shenendehowa Cent. School Dist.*, 307 AD2d 514, 516). However, those cases are inapposite inasmuch as they involve contracts pursuant to which the plaintiff contractors were entitled to payment upon completion or substantial completion of the work. In *Kingsley Arms* (9 AD3d at 698), for example, the court held that the plaintiff's breach of contract cause of action accrued when the plaintiff "requested and was refused a certificate of substantial completion and was told that it would 'not be paid the balance of the money owed on the project.' " At that point, or shortly thereafter, "the breach of contract had occurred and plaintiff's damages were clearly ascertainable . . . ." (*id.*).

Here, by contrast, each of the insurance contracts explicitly provided that plaintiff's obligation to pay was contingent upon "notice" or a "demand" by defendants. "[A]s a general rule, when the right to final payment is subject to a condition, the obligation to pay arises and the cause of action accrues[] only when the condition has been fulfilled" (*John J. Kassner & Co.*, 46 NY2d at 550). Under the express language of the contracts at issue in this case, plaintiff's obligation to pay the retrospective premiums, adjustable deductibles and other fees arose – and defendants' breach of contract counterclaims accrued – only after defendants demanded payment thereof and plaintiff refused to pay (*see generally Russack v Weinstein*, 291

AD2d 439, 440-441).  Although the insurance policies required defendants to make periodic adjustments, plaintiff's payment obligation was not triggered until defendants provided plaintiff with an invoice or other demand for reimbursement.  Thus, the contracts at issue were not breached, and defendants' counterclaims did not accrue, until defendants calculated the necessary adjustments, sent an invoice to plaintiff, and plaintiff refused to pay the amounts due.

Indeed, numerous federal and state courts confronting retrospective premium and adjustable deductible policies similar to those at issue here have concluded that the relevant date, for statute of limitations purposes, is when the invoices were sent and the recipient failed or refused to pay (see e.g. National Union Fire Ins. Co. of Pittsburgh, Pa. v LSB Indus., Inc., 296 F3d 940; Continental Ins. Co. v Coyne Intl. Enter. Corp., 700 F Supp 2d 207, 212-213; Potomac Ins. Co. of Ill. v Richmond Home Needs Servs., Inc., 2006 WL 2521283, *2; Liberty Mut. Ins. Co. v Precision Valve Corp., 402 F Supp 2d 481; Brookshire Grocery Co. v Bomer, 959 SW2d 673; Commissioners of State Ins. Fund v SM Transp. Ltd., 11 Misc 3d 1083[A], 2006 NY Slip Op 50677[U]).  As the court in SM Trans. Ltd. (2006 NY Slip Op 50677[U], *2) reasoned, "The [s]tatute of [l]imitations did not begin to run at the end of each policy period, but rather began to run at a point after contemplated adjustments to the premium were made pursuant to the audit . . . CPLR 213 began to run when the plaintiff's cause of action accrued . . ., and the plaintiff's cause of action accrued when the defendant breached the terms of its policies by failing to pay premiums demanded after the audit" (emphasis added).

The majority cites State of New York v City of Binghamton (72 AD2d 870, 871) for the proposition that a party "will not be permitted to prolong the [s]tatute of [l]imitations simply by refusing to make a demand."  That case, however, did not involve a breach of contract; rather, it involved a statutory provision requiring the State to notify the City when a highway project was completed and requiring the City to pay any amount owed within 60 days thereafter (id. at 871).  Thus, the Court concluded that, "[w]hile the required statutory notice was not given here until April 11, 1977, the cause of action accrued on April 19, 1971, 60 days after the conceded date of completion when there first existed the legal right to be paid" (id.).

Here, because the insurance contracts explicitly conditioned plaintiff's obligation to pay upon notice or a demand by defendants, defendants' breach of contract counterclaims did not accrue until plaintiff failed or refused to pay in accordance with defendants' demands (see Russack, 291 AD2d at 440-441; Henry Boeckmann, Jr. & Assoc. v Board of Educ., Hempstead Union Free School Dist. No. 1, 207 AD2d 773, 775; see also Continental Cas. Co. v Stronghold Ins. Co., Ltd., 77 F3d 16, 21).  Notably, in both Continental (77 F3d 16) and Russack (291 AD2d 439), the plaintiffs had a right to demand payment several years before they actually did so.  Nevertheless, both the United States Court of Appeals for the Second Circuit and the Second Department held that this was of no moment for statute of limitations purposes inasmuch as the plaintiffs' causes of action did not accrue

until they provided notice to and/or demanded payment from the defendants.

Entered:  February 10, 2011                    Patricia L. Morgan
                                               Clerk of the Court