[967 NE2d 1187, 944 NYS2d 742]

HAHN AUTOMOTIVE WAREHOUSE, INC., Respondent, v AMERICAN ZURICH INSURANCE COMPANY et al., Appellants.

Argued February 15, 2012; decided March 29, 2012

**POINTS OF COUNSEL**

*Damon Morey LLP*, Buffalo (*Michael J. Willett* of counsel), for appellants. The statute of limitations applicable to American Zurich Insurance Company's and Zurich American Insurance Company's claims for nonpayment of invoices issued to Hahn Automotive Warehouse, Inc. for amounts owed under the parties' insurance agreements began to run when Hahn failed to pay the invoiced amounts by the dates that the payments were due. (*Britt v Legal Aid Socy.*, 95 NY2d 443; *Matter of Motor Veh. Acc. Indem. Corp. v Aetna Cas. & Sur. Co.*, 89 NY2d 214; *Aetna Life & Cas. Co. v Nelson*, 67 NY2d 169; *Ely-Cruikshank Co. v Bank of Montreal*, 81 NY2d 399; *John J. Kassner & Co. v City of New York*, 46 NY2d 544; *Russack v Weinstein*, 291 AD2d 439; *Henry Boeckmann, Jr. & Assoc. v Board of Educ., Hempstead Union Free School Dist. No. 1*, 207 AD2d 773; *Micha v Merchants Mut. Ins. Co.*, 94 AD2d 835; *Continental Cas. Co. v Stronghold Ins. Co., Ltd.*, 77 F3d 16; *Commissioners of State Ins. Fund v SM Transp. Ltd.*, 11 Misc 3d 1083[A], 2006 NY Slip Op 50677[U].)

*The Wolford Law Firm LLP*, Rochester (*Michael R. Wolford* and *Lea T. Nacca* of counsel), for respondent. American Zurich Insurance Company's and Zurich American Insurance Company's (Zurich) claims are time-barred because Zurich had the

right to demand payment from Hahn Automotive Warehouse, Inc. more than six years before this action was commenced. (*Kingsley Arms, Inc. v Copake-Taconic Hills Cent. School Dist.*, 9 AD3d 696, 3 NY3d 767; *Albany Specialties v Shenendehowa Cent. School Dist.*, 307 AD2d 514; *Minskoff Grant Realty & Mgt. Corp. v 211 Mgr. Corp.*, 71 AD3d 843; *Aetna Life & Cas. Co. v Nelson*, 67 NY2d 169; *Town of Brookhaven v MIC Prop. & Cas. Ins. Corp.*, 245 AD2d 365, 92 NY2d 806; *State of New York v City of Binghamton*, 72 AD2d 870; *Tydings v Greenfield, Stein & Senior, LLP*, 11 NY3d 195; *Snyder v Town Insulation*, 81 NY2d 429; *GML, Inc. v Cinque & Cinque, P.C.*, 9 NY3d 949, 1016; *MHR Capital Partners LP v Presstek, Inc.*, 12 NY3d 640.)

## OPINION OF THE COURT

GRAFFEO, J.

The issue on this appeal is whether the six-year statute of limitations applicable to the insurers' breach of contract counterclaims began to run when they possessed the legal right to demand payment from the insured or years later after they issued invoices. Under the terms of the insurance contracts in this case, we conclude that the counterclaims accrued when the insurers had the right to demand payment.

Plaintiff Hahn Automotive Warehouse, Inc., an auto parts distributor with operations in multiple states, secured general liability, automotive liability and workers' compensation policies from defendants American Zurich Insurance Company and Zurich American Insurance Company (collectively, Zurich) for annual coverage periods between September 1992 and September 2003. Zurich also acted as the claims agent for automobile damage claims for which Hahn was self-insured from March 1997 until September 2003. The complex insurance arrangements at issue in this litigation can be broken into four general categories: (1) policies subject to retrospective premium agreements; (2) adjustable deductible policies; (3) deductible policies; and (4) claim services contracts.

Under the first category—encompassing several policies tied to retrospective premium plans—Hahn's initial premiums were based on estimated expenses and losses. Zurich was contractually required to recalculate the premiums owed 18 months after the policies' inception, with annual adjustments based on actual claims experience for as long as open claims remained. If an adjusted premium exceeded the initial premium, Zurich was to invoice Hahn for the difference. But if the recalculation resulted

in a lesser premium than initially paid, Zurich would owe Hahn a refund. Any amounts owed by Hahn were to be paid "within ten (10) days of receipt of [Zurich's] demand" for payment.

Similarly, the adjustable deductible policies—the second type of insurance plan used by the parties—involved the payment of an initial premium to be adjusted annually by Zurich based on actual claims experience, beginning 18 months after policy inception. These policies further required Hahn to pay deductible losses and claim expenses on a monthly or quarterly basis for 42 months, after which such losses and expenses were to be billed annually as part of the premium adjustment process.

In the third category, the deductible policies, Zurich was to pay the submitted claims but could then seek payment from Hahn on a monthly basis for the amounts that fell below the applicable deductible together with "allocated loss adjustment expenses" and other fees. These policies also required Zurich to perform an initial adjustment 18 months after policy inception, followed by yearly adjustments. The deductible policies specified that Hahn "shall pay . . . [Zurich] within twenty (20) days of its demand."

Finally, the annual claim services contracts, constituting the fourth category, provided that Zurich would undertake claims handling duties for Hahn with respect to automobile physical damage claims in exchange for a fixed fee per claimant. The contracts also required Hahn to pay estimated fees during the terms of the agreements, with a final reconciliation to be performed by Zurich 12 months after the expiration of each agreement.

Although the contractual relationship between Hahn and Zurich commenced in the early 1990s, it was not until an internal audit of Zurich occurred in 2005 that the insurer discovered that it had not billed Hahn for claim deductibles or allocated loss adjustment expenses in connection with 10 years of claims for two deductible policies (category three policies) issued during the September 1995 to September 1996 policy period. After determining the purported amounts owed, Zurich sent Hahn an invoice in April 2005 seeking payment of $1,123,874. Hahn did not pay the bill.

Almost a year later, on March 2, 2006, Zurich sent Hahn an invoice for an additional $751,514, reflecting annual adjustments it contended were due on a variety of policies subject to

the category one retrospective premium agreements and category two adjustable deductible policies. The amount billed covered adjustments on policies from March 1995 through March 2005.[1] On March 27, 2006, Zurich presented Hahn with a third invoice for $71,615 after realizing that it had neglected to bill Hahn for fees owed under the category four claim services contracts beginning in 1997.[2] Because Hahn failed to pay any of the invoices, Zurich drew on a $400,000 letter of credit that Hahn had previously deposited with Zurich and, over Hahn's objection, applied that amount to the oldest of the outstanding bills.

In May 2006, Hahn commenced this action against Zurich alleging four causes of action. The first claim requested a declaration that any of Zurich's bills for debts that arose more than six years before the commencement of the action were time-barred by the relevant statute of limitations. The remaining claims sought damages related to Zurich's allegedly improper use of the letter of credit. Zurich counterclaimed for breach of contract based on Hahn's nonpayment of the amounts billed in the April 2005, March 2, 2006 and March 27, 2006 invoices. Both parties moved for summary judgment.

Supreme Court granted Hahn partial summary judgment on the first cause of action, concluding that "the statute of limitations has run as to all claims for which Zurich had the right to demand payment more than six years prior to the commencement of this action" because the claims accrued when "Zurich had the right to demand payment" (30 Misc 3d 1222[A], 2009 NY Slip Op 52789[U], *4 [2009]). Although the court ruled in favor of Zurich on the letter of credit issue, holding that Zurich properly applied the $400,000 to the outstanding bills, the court did not grant Zurich summary judgment dismissing the second through fourth claims.

The Appellate Division, with one Justice dissenting in part, modified, by dismissing the second, third and fourth causes of action, and otherwise affirmed (81 AD3d 1331 [4th Dept 2011]).

---

**1.** Zurich previously sent Hahn adjustment invoices for these policies in 1998, 1999 and 2003, but Hahn did not pay them because it did not understand the complex calculations. Zurich voided those bills when it submitted the March 2, 2006 adjustment invoice.

**2.** In June 2006, Zurich submitted a fourth invoice to Hahn relating to additional adjustments pertaining to policies subject to the category one retrospective premium agreements and category two adjustable deductible polices. This invoice reflected a net refund to Hahn of $262,480, which Zurich refused to credit because Hahn had failed to pay the previous three bills.

The majority concurred with Supreme Court that Zurich's "counterclaims for any debt that arose more than six years prior to the commencement of this action were time-barred" (*id.* at 1333). The majority also agreed that Zurich properly drew on the letter of credit and therefore dismissed the second through fourth claims. The dissenter would have found that all of the amounts billed by Zurich were timely, reasoning that the six-year statute of limitations did not begin to run until Hahn refused to pay the invoices in 2005 and 2006. The Appellate Division granted Zurich leave to appeal on a certified question (83 AD3d 1602 [2011]), and we now affirm.[3]

Zurich argues that all of the amounts billed in the three invoices are timely because the six-year statute of limitations did not begin to run until 2005 and 2006, when Zurich demanded payment and Hahn refused to pay. Hahn counters that the courts below properly concluded that Zurich's counterclaims accrued much earlier, when it possessed the right to demand payment for the various amounts owed, such that any debts that arose before May 2000 (six years prior to the commencement of this action) are untimely.

Under CPLR 213 (2), a claim for breach of contract is governed by a six-year statute of limitations. As a general principle, the statute of limitations begins to run when a cause of action accrues (*see* CPLR 203 [a]), that is, "when all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court" (*Aetna Life & Cas. Co. v Nelson*, 67 NY2d 169, 175 [1986]). In contract actions, we have recognized that a claim generally accrues at the time of the breach (*see Ely-Cruikshank Co. v Bank of Montreal*, 81 NY2d 399, 402 [1993]). And, we have explained further that "when the right to final payment is subject to a condition, the obligation to pay arises and the cause of action accrues, only when the condition has been fulfilled" (*John J. Kassner & Co. v City of New York*, 46 NY2d 544, 550 [1979]).

A consistent line of Appellate Division precedent holds that, where "the claim is for payment of a sum of money allegedly owed pursuant to a contract, the cause of action accrues when the [party making the claim] possesses a legal right to demand payment" (*Minskoff Grant Realty & Mgt. Corp. v 211 Mgr. Corp.*, 71 AD3d 843, 845 [2d Dept 2010]; *see also Kuo v Wall St. Mtge.*

---

**3.** Because Hahn did not cross-appeal, the Appellate Division's dismissal of the second through fourth claims on Zurich's use of the letter of credit is not before us.

*Bankers, Ltd.*, 65 AD3d 1089, 1090 [2d Dept 2009]; *Swift v New York Med. Coll.*, 25 AD3d 686, 687 [2d Dept 2006]; *Kingsley Arms, Inc. v Copake-Taconic Hills Cent. School Dist.*, 9 AD3d 696, 698 [3d Dept 2004], *lv dismissed* 3 NY3d 767 [2004]; *Albany Specialties v Shenendehowa Cent. School Dist.*, 307 AD2d 514, 516 [3d Dept 2003]). In other words, the statute of limitations in these cases was triggered when the party that was owed money had the right to demand payment, not when it actually made the demand.

We agree with Hahn and the Appellate Division majority that it is reasonable to apply this accrual principle to the insurance contracts at issue here and therefore conclude that the statute of limitations on Zurich's counterclaims began to run when it acquired the right to demand payment of the various amounts owed under the policies. Zurich acknowledges that it had the right under its contracts to bill Hahn years earlier for many of the sums reflected in the April 2005, March 2, 2006 and March 27, 2006 invoices—in some instances more than a decade earlier—but failed to do so through inadvertence. Hence, the courts below properly determined that any debts for which Zurich had the legal right to demand payment prior to May 2000, i.e., more than six years before the commencement of this action, are time-barred.[4] To hold otherwise would allow Zurich to extend the statute of limitations indefinitely "by simply failing to make a demand" (*Town of Brookhaven v MIC Prop. & Cas. Ins. Corp.*, 245 AD2d 365, 365 [2d Dept 1997], *lv denied* 92 NY2d 806 [1998]; *see also State of New York v City of Binghamton*, 72 AD2d 870, 871 [3d Dept 1979] ["The Statute of Limitations begins to run when the right to make the demand for payment is complete, and the plaintiff will not be permitted to prolong the Statute of Limitations simply by refusing to make a demand"]).

Finally, we are unpersuaded by Zurich's assertion that, consistent with *John J. Kassner & Co.*, its counterclaims could not have accrued until it sent the three invoices between April 2005 and March 2006 because its right to payment under the policies was subject to a condition precedent—Zurich's issuance of a demand for payment. Unlike *John J. Kassner & Co.*, where the plaintiff's right to payment was expressly conditioned on an audit by a third party, Zurich cannot point to any contract

---

4. Counterclaims are "deemed interposed when the plaintiff filed the main action" (Siegel, NY Prac § 48, at 67 [5th ed]; *see also* CPLR 203 [d]).

language unambiguously conditioning its right to payment on its own demand (*see generally MHR Capital Partners LP v Presstek, Inc.*, 12 NY3d 640, 645 [2009] [stating that the use of terms like "if," "unless" and "until" would constitute "unmistakable language of condition"] [internal quotation marks and citation omitted]). Furthermore, the contracts contain specific references to the applicable time periods when Zurich was entitled to calculate adjustments and bill Hahn for the amounts owed. Such provisions contradict the open-ended arrangement now proposed by Zurich.[5]

Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed, with costs, and the certified question answered in the affirmative.

READ, J. (dissenting). Plaintiff Hahn Automotive Warehouse, Inc. (Hahn) does not contest the amount of the moneys that it

---

**5.** We reject Zurich's contention, accepted by the dissent, that we should adopt an accrual-upon-demand rule for the retrospective insurance arrangements at issue. Although the insurance policies and adjustment formulas were complex, Zurich does not dispute that it had the ability to calculate the relevant adjustments and submit invoices years earlier, but failed to do so through its own oversight. In support of an accrual-upon-demand rule, the dissent cites a number of federal district court cases, including *Continental Ins. Co. v Coyne Intl. Entertainment Corp.* (700 F Supp 2d 207 [ND NY 2010]), *Potomac Ins. Co. of Ill. v Richmond Home Needs Servs., Inc.* (2006 WL 2521283, 2006 US Dist LEXIS 62224 [SD NY 2006]) and *Liberty Mut. Ins. Co. v Precision Valve Corp.* (402 F Supp 2d 481 [SD NY 2005]). But each of these cases provided little analysis, relying instead on an Appellate Division case that involved neither an insurance agreement nor a sum of money owed by one party to another pursuant to a contract (*see Russack v Weinstein*, 291 AD2d 439 [2d Dept 2002]). Moreover, the dissent's citation to *Continental Cas. Co. v Stronghold Ins. Co., Ltd.* (77 F3d 16 [2d Cir 1996]) is misplaced. *Continental* involved a claim by a reinsured against reinsurers, wherein the Second Circuit held that the reinsured's obligation to give notice to the reinsurers of the underlying claims was a condition precedent to payment, reasoning that such conditions are common in insurance contracts because they "allow[ ] the insurance company time to investigate and pay the claim" (*id.* at 20). Here, in contrast, the relevant policies contain no condition precedent and Zurich did not need to give Hahn any time to investigate. Finally, although the case law is sparse, we note that there is precedent contrary to the dissent's accrual-upon-demand rule in the context of retrospective insurance agreements (*see Travelers Ins. Co. v Jacob C. Mol, Inc.*, 898 F Supp 528, 531 [WD Mich 1995] ["Travelers argues that the claim could not accrue until it sent its bill for the premium. However, . . . Travelers conceded that there is no duty on Travelers to send its retrospective premium notice at any fixed point in the future. Thus, theoretically, Travelers could keep an account open for many years before sending its bill and, under its theory, delay indefinitely the accrual of its claim. This would, of course, put the operation of the statute of limitations under the sole control of Travelers"]).

owes defendants American Zurich Insurance Company and Zurich American Insurance Company (collectively, Zurich) under the various insurance contracts at issue in this case, which called for amounts owed to be adjusted upward or downward retrospectively, principally to reflect actual loss and cost experience. Instead, Hahn argues that Zurich may not recover this acknowledged debt, reflected in three invoices issued between April 2005 and March 2006, because of the expiration of CPLR 213 (2)'s six-year statute of limitations for breach of contract claims.

The majority agrees with Hahn, holding that Zurich's claims are time-barred because it "possessed the legal right" under the insurance contracts "to demand payment" from Hahn more than six years before the invoices were actually sent (majority op at 767). But courts have heretofore uniformly concluded (as did the dissenter below) that the statute of limitations for a claim for unpaid premiums calculated on the basis of claims history does not accrue until the insured refuses payment after demand has been made by the insurer. A breach, if any, would only occur when a due date passes without payment being made. To hold otherwise, as the majority does, creates an illogical situation whereby a claim for breach of contract accrues before the insured knows whether it owes the insurer any money at all, much less how much. In other words, the claim for breach accrues before any breach can possibly occur. Accordingly, I respectfully dissent.

Under the policies at issue, Hahn paid premiums to Zurich and, when loss history became known, Zurich adjusted the various amounts owed under the policies to reflect actual losses and costs. In some cases, Hahn would owe additional moneys to Zurich. In others, a refund would be due Hahn. The majority is "unpersuaded by Zurich's assertion that" in light of these contractual arrangements "its counterclaims could not have accrued until it sent the three invoices . . . because its right to payment under the policies was subject to a condition precedent—Zurich's issuance of a demand for payment" (majority op at 771).

The source of the majority's skepticism is the absence of "any contract language unambiguously conditioning [Zurich's] right to payment on its own demand," and the presence in the contracts of "specific references to the applicable time periods when Zurich was entitled to calculate adjustments and bill Hahn for the amounts owed" (id.). As to the first point, Zurich was

not in a position under the contracts to demand payment until it determined that Hahn owed additional moneys. And this determination was based on computations carried out by Zurich in conformity with the complex claims adjustment formulae specified in the contracts. By their very nature and structure, then, these contracts conditioned payment upon demand; otherwise, there was no way for Hahn to know whether or how much additional moneys it owed.

Further, the Retrospective Premium Agreement, for example, explicitly provided that

> "[b]ased upon the selection of the Annual Policy Period Option . . . , *[Zurich] shall compute and [Hahn] shall pay to [Zurich] within ten (10) days of the receipt of its demand therefore,* Earned Retrospective Premium based upon Incurred Losses *valued as of a date six (6) months after the expiration of each such period, as soon as practicable after such valuation.* Additional Earned Retrospective Premium Adjustments shall be computed by [Zurich] based upon Incurred Losses valued annually thereafter as soon as practicable after such valuation dates, payable within ten (10) days of receipt of its demand therefore, until such time as [Zurich] shall designate an adjustment as being final."

The majority takes the position, as I understand it, that under this provision, Zurich had "the legal right to demand payment" for losses and expenses as they factored into the adjustment for the year in which the losses were paid and the expenses incurred; therefore, Zurich was foreclosed by the statute of limitations from recovering for such losses or expenses if it waited more than six years before taking them into account.

But the insurance contracts in this case essentially created a running tally of debits and credits, which remained open until such time as all claims or expenses for a particular policy year were resolved—or, in the words of the above-cited provision, until Zurich "designate[d] an adjustment as being final." It was only at this point, when the final amount of a retrospective premium could be calculated, that a claim would accrue under these policies in the absence of a demand for payment (*see e.g.* 6-35 Holmes' Appleman on Insurance 2d § 35.3 [with respect to retrospective premiums, "(c)ourts hold that any statute of limitations does not begin to run until a final premium may be

calculated under the express terms of the applicable agreement"], citing *National Union Fire Ins. Co. of Pittsburgh, Pa. v LSB Indus., Inc.*, 296 F3d 940 [10th Cir 2002]). No other court considering the accrual of claims arising under insurance contracts that involve a retrospective premium or are otherwise adjustable has taken a position, under New York law or otherwise, comparable to the majority's (*see e.g. Continental Ins. Co. v Coyne Intl. Enter. Corp.*, 700 F Supp 2d 207 [ND NY 2010] [cause of action for recovery of unpaid retrospective insurance premium adjustment accrued when insured refused to pay invoice]; *Reliance Ins. Co. v Griffin Dewatering Corp.*, 2007 WL 1165557, 2007 US Dist LEXIS 29110 [ND Ind 2007] [same]; *Potomac Ins. Co. of Ill. v Richmond Home Needs Servs., Inc.*, 2006 WL 2521283, 2006 US Dist LEXIS 62224 [SD NY 2006] [same]; *Liberty Mut. Ins. Co. v Precision Valve Corp.*, 402 F Supp 2d 481 [SD NY 2005] [same]; *Transportation Ins. Co. v Star Indus., Inc.*, 2005 WL 1801671, 2005 US Dist LEXIS 43121 [ED NY 2005] [where workers' compensation policy provided for payment of retrospective premium based on claims experience, cause of action for unpaid premiums accrued at time of adjustment]; *Temploy, Inc. v Companion Prop. & Cas. Ins. Co.*, 2008 WL 4495782, 2008 US Dist LEXIS 78572 [SD Ala 2008] [in retrospective rated insurance policies, a cause of action for wrongful assessment of a premium accrues on the date the payment is due, but refused]; *Brookshire Grocery Co. v Bomer*, 959 SW2d 673 [Tex Ct App 1997] [where policy had a retrospective premium endorsement, cause of action accrued when final payment was demanded by the insurer]; *cf. Continental Cas. Co. v Stronghold Ins. Co., Ltd.*, 77 F3d 16, 22 [2d Cir 1996] [where reinsured waited more than six years after settling last of claims before tendering claims to reinsurers, "(its) losses were due and payable, and its causes of action accrued, only after it reported the losses to the reinsurers, and the reinsurers denied coverage"]).

Notably, the majority did not cite a single decision to support its position except *Travelers Ins. Co. v Jacob C. Mol, Inc.* (898 F Supp 528, 531 [WD Mich 1995]). But that case addressed when a claim accrued under Michigan law against a corporation's director for unlawfully dissolving the corporation and distributing its assets to shareholders without first paying a corporate debt; specifically, Travelers' retrospective insurance premium. The court held that Travelers' claim accrued on the date the director approved the unlawful distribution, noting that "the

lawsuit against [the director] is for failure to provide for the obligation as distinguished from a suit on the obligation itself" (*id.* at 531).

The majority seems troubled at the prospect that an insurer might unduly delay the running of the statute of limitations by failing to perform or bill for adjustments in a timely manner. In this case, Zurich undertook an extensive audit of accounts, which uncovered the previously unbilled losses and expenses accounted for in the three invoices. In addition, Hahn's agent disputed, or at least said that he did not understand, some of the invoices that Zurich forwarded, which held up reconciliation and billing. But as Zurich points out, Hahn does not claim to have been injured by these delays and no longer questions the accuracy of the amounts computed; Hahn was well aware that it owed Zurich money, having been alerted by specific advice from its broker and his periodic reports, which compared paid loss billings to loss runs. For example, for several years these reports showed that Hahn had not been billed for losses under the general liability and automobile liability program for the period 9/30/95 to 9/30/96. As Zurich remarks, a ruling in its favor is unlikely to "encourage parties who are owed money to refrain from sending out bills in the hope of prolonging the statute of limitations."

Finally, the majority cites *Town of Brookhaven v MIC Prop. & Cas. Ins. Corp.* (245 AD2d 365 [2d Dept 1997]) and *State of New York v City of Binghamton* (72 AD2d 870 [3d Dept 1979]) for the proposition that Zurich should not be permitted to prolong the statute of limitations by neglecting to make a demand for payment. But these are both construction cases where services were performed and payment was then due at a particular time, not a contractual relationship like this one, which contemplates ongoing reconciliation of credits and debits until such time as all the claims arising in the year covered by a policy have been resolved, and a final adjustment made.

Chief Judge LIPPMAN and Judges CIPARICK and JONES concur with Judge GRAFFEO; Judge READ dissents in a separate opinion in which Judges SMITH and PIGOTT concur.

Order, insofar as appealed from, affirmed, etc.