PREMIER EXHIBITIONS, INC. and
RMS Titanic, Inc., Plaintiffs and
Counter Defendants,

v.

MARMARGAR, INC., Defendant
and Counterclaimant.

Civil Action No. 2:12cv544.

United States District Court,
E.D. Virginia,
Norfolk Division.

Dec. 6, 2012.

Robert William McFarland, Erin Quinn Ashcroft, Sarah Kate McConaughy, Shepherd D. Wainger, McGuireWoods LLP, Norfolk, VA, Robert J. Waddell, Jr., McGuire Woods LLP, Atlanta, GA, for Plaintiffs and Counter Defendants.

Marissa Ariana Coheley, Michelle Lynn Merola, Ryan King Cummings, Hodgson Russ LLP, Buffalo, NY, Steven Douglas McLain, Kalbaugh Pfund & Messersmith PC, Richmond, VA, Ryan T. Pumpian, Bryan Cave, LLP, Atlanta, GA, for Defendant and Counterclaimant.

### MEMORANDUM OPINION
### AND ORDER

REBECCA BEACH SMITH, Chief Judge.

This matter comes before the court on the Motion to Dismiss [Counterclaim] for

Failure to State a Claim ("Motion to Dismiss"), filed by Premier Exhibitions, Inc. ("Premier") and RMS Titanic, Inc. ("RMST"), pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 17.)

## I. Factual and Procedural Background

This is a declaratory judgment action concerning the enforceability of two purported contracts, which pertain to the appraisal and sale of artifacts from the RMS *Titanic* ("*Titanic*"). Marmargar, Inc. ("Marmargar"), a New York appraisal, conservation, and restoration corporation, alleges that the contracts are valid and enforceable. Answer and Countercl. ¶ 55.

The following is Marmargar's account of the events surrounding the alleged contracts. On or about June 17, 2004, Marmargar entered into a Contract for Appraisal Services ("Appraisal Contract") with RMST, under which it was "to perform an appraisal of the fair market value of RMST's salvor-in-possession rights relative to the RMS Titanic wreckage and artifacts, and the value of the recovered artifacts." *Id.* ¶ 28. In March, 2005, James J. Martin, the president of Marmargar, prepared a draft appraisal report pursuant to this contract, which Marmargar delivered to RMST. *Id.* ¶¶ 6, 29–30. In November, 2005, Marmargar issued an invoice to RMST for $1,029,425 for its work under the Appraisal Contract. *Id.* ¶ 32. RMST did not pay this invoice, but assured Marmargar that payment would be forthcoming. *Id.* ¶ 33. Relying on

RMST's assurances, Marmargar completed the final appraisal report. Compl. Ex. 6.[1] Marmargar alleges that it fully performed under the Appraisal Contract. Answer and Countercl. ¶ 31. Marmargar issued another invoice to RMST in the spring of 2007. *Id.* ¶ 37. Again, RMST did not pay, instead agreeing to compensate Marmargar from proceeds of "the eventual sale of the RMS Titanic and its artifacts." *Id.* ¶¶ 35–36.

On or about April 13, 2007, the Plaintiffs and Marmargar executed a Contract for Exclusive Rights of Representation ("Exclusive Rights Contract"), under which Marmargar was to receive four percent "of all moneys received by Premier and RMST for the sale of RMST and its artifacts." *Id.* ¶ 37. According to Marmargar, "Mr. Martin has continued to act as the exclusive agent for RMST since April 2007 by engaging potential buyers, providing information related to RMST's Salvor–in–Possession rights and the Titanic artifacts, and verifying the authenticity and credibility of potential buyers." *Id.* ¶ 38.

The Plaintiffs deny any payment is owed under the Appraisal Contract, and contest the validity of the Exclusive Rights Contract. Compl. ¶¶ 9, 11. On August 7, 2012, the Plaintiffs filed an action against Marmargar in the Northern District of Georgia pursuant to 28 U.S.C. § 2201, seeking a declaratory judgment holding the Appraisal Contract and the Exclusive Rights Contract unenforceable. Compl. ¶ 1.[2] On September 10, 2012, Marmargar

---

**1.** While Marmargar does not allege this fact in its Counterclaim, it made this allegation in its Demand Letter of May 14, 2012, which the Plaintiffs attached to their Complaint. The court will not ignore this factual allegation. *See Sec'y of State for Defence v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir.2007) (holding that in reviewing a motion to dismiss, the court may consider documents attached to the parties' pleadings where "they

are integral to the complaint and authentic"); *Kisano Trade & Invest Ltd. v. Winding Gulf Coal Sales, LLC,* No. 2:09–0804, 2010 WL 1904669, at \*2, 2010 U.S. Dist. LEXIS 45715, at \*6–7 (S.D.W.Va. May 10, 2010) (considering relevant documents attached to the complaint in deciding the plaintiff's motion to dismiss the defendant's counterclaim).

**2.** This court has the power to hear this declaratory judgment action under 28 U.S.C.

filed its Answer to Complaint and Counterclaim. On that same day, Marmargar filed a motion to transfer the case to the Eastern District of Virginia, which was granted on September 28, 2012. On October 4, 2012, the Plaintiffs filed the instant Motion to Dismiss Marmargar's Counterclaim and accompanying Memorandum in Support. Marmargar filed a Memorandum in Opposition to the Motion to Dismiss on November 9, 2012, to which the Plaintiffs replied on November 19, 2012. Therefore, having been fully briefed, this matter is ripe for review.

## II. Standard of Review for Motion to Dismiss

A claim for declaratory relief must contain "a short and plain statement ... showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a); *see also Miller v. Pac. Shore Funding*, 224 F.Supp.2d 977, 993 (D.Md.2002). The complaint need not make detailed factual allegations, but Rule 8 "requires more than labels and conclusions[.] [A] formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). Facial plausibility means that a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550

U.S. at 556, 127 S.Ct. 1955). It is, therefore, not enough for a party to allege facts demonstrating a "sheer possibility" or "mere[ ] consist[ency]" with unlawful conduct. *Id.* (citing *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

The Supreme Court, in *Twombly* and *Iqbal*, offered guidance to courts evaluating a motion to dismiss:

[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 129 S.Ct. at 1950. The court should accept facts alleged in the complaint as true and view those facts in the light most favorable to the pleading party. *Venkatraman v. REI Sys.*, 417 F.3d 418, 420 (4th Cir.2005). Overall, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

## III. Analysis

The court must first, under *Iqbal*, determine which of Marmargar's pleadings consist of legal conclusions, receiving no assumption of truth, and which are factual allegations entitled to an assumption of

§ 2201, as the case is one of actual controversy otherwise within the court's jurisdiction. *See* 28 U.S.C. § 2201. Although the Federal Declaratory Judgment Act gives district courts jurisdiction over such matters, it does not require them to exercise this jurisdiction. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288,

115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). Given that declaratory relief in this matter "will serve a useful purpose in clarifying and settling the legal relations in issue," the court exercises its discretion to hear this case. *See Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 594 (4th Cir.2004).

veracity. *See Iqbal,* 129 S.Ct. at 1950. The court then must determine whether Marmargar's factual allegations, assumed true, plausibly give rise to an entitlement to relief. *See id.*

New York law controls Marmargar's state-law counterclaims.[3] Under New York Law, to state a claim for breach of contract a party need only allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir.1996). With regard to the first element—the existence of an agreement—"there must be 'an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound.'" *Kavitz v. IBM,* 458 Fed.Appx. 18, 19 (2d Cir.2012) (quoting *Civil Serv. Emps. Ass'n, Inc. v. Baldwin Union Free Sch. Dist.,* 84 A.D.3d 1232, 924 N.Y.S.2d 126, 128 (2011)).

### A. Appraisal Contract

The Plaintiffs advance two. arguments to support their Motion to Dismiss the counterclaim involving the Appraisal Contract: 1) Marmargar did not fully perform under the contract; and 2) Marmargar's claim is time-barred.

### 1. Performance

The Plaintiffs argue that Marmargar did not fulfill its obligations under the Appraisal Contract and, therefore, is not entitled to relief as a matter of law. Mem. Supp. Mot. Dismiss at 5. The Plaintiffs are correct that Marmargar's statement that it "fully performed its obligations under the Appraisal Contract," Answer and Countercl. ¶ 31, is a legal conclusion and, there-

fore, is not entitled to an assumption of truth. *See Iqbal,* 129 S.Ct. at 1950. The other facts Marmargar offers, however, when assumed true and viewed in the light most favorable to Marmargar, are sufficient to allow the court reasonably to infer that Marmargar adequately performed under the Appraisal Contract.

Marmargar alleges that Mr. Martin completed his analysis of RMST's Salvor-in-Possession rights and prepared a draft appraisal report, which he provided to RMST. Answer and Countercl. ¶ 29–30. The draft report assessed the fair market value of the artifacts and "included a comprehensive description of the methodology used to calculate the value." *Id.* ¶ 30. On the basis of these allegations alone, Marmargar has sufficiently alleged its adequate performance under the Appraisal Contract. Marmargar's contention that it prepared a final report "including several binders of supporting documentation listing the value for every artifact," Compl. Ex. 6,[4] further bolsters the court's conclusion.

### 2. Statute of Limitations

The Plaintiffs argue that even if Marmargar did perform under the Appraisal Contract, Marmargar's· claim is barred by the statute of limitations. Mem. Supp. Mot. Dismiss at 4. Ordinarily, a motion to dismiss "cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir.2007). Only where "all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint* '" may a statute of limitations

---

3. Both parties agree that New York's substantive law applies to this dispute, as it is the jurisdiction in which the parties signed the contracts at issue. Mem. Supp. Mot. Dismiss at 4, n.1; Mem. Opp'n Mot. Dismiss at 2, n.1.

4. *See supra* note 1.

defense be reached at the motion to dismiss stage. *Id.* (emphasis added in *Goodman* ) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst,* 4 F.3d 244, 250 (4th Cir.1993)).

▮ The statute of limitations for a breach of contract action under New York law is six years. N.Y. C.P.L.R. 213(2); *Chase Sci. Research v. NIA Grp.,* 96 N.Y.2d 20, 725 N.Y.S.2d 592, 749 N.E.2d 161, 163 (2001). The limitations period begins to run at the time of the breach. *Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.,* 18 N.Y.3d 765, 944 N.Y.S.2d 742, 967 N.E.2d 1187, 1190 (2012). Where the contract action arises from a claim " 'for payment of a sum of money allegedly owed pursuant to a contract, the cause of action accrues when the [party making the claim] possesses a legal right to demand payment' " *Id.* (quoting *Minskoff Grant Realty & Mgmt. Corp. v. 211 Manager Corp.,* 71 A.D.3d 843, 897 N.Y.S.2d 485, 487 (N.Y.App.Div.2010)). Importantly, the statute of limitations begins to run "when the party that [is] owed money had the right to demand payment, not when it actually made the demand." *Id.,* 944 N.Y.S.2d 742, 967 N.E.2d at 1191.

▮ The Plaintiffs contend that if Marmargar had a claim for breach of contract, the limitations period for that claim began to run in March, 2007, when Marmargar delivered the draft appraisal report to the Plaintiffs, or at the latest in November, 2007, when Marmargar issued the first invoice to the Plaintiffs. Mem. Supp. Mot. Dismiss at 5. In either case, the Plaintiffs maintain, the six-year limitations period

has expired. Marmargar counters that the cause of action did not accrue until the spring of 2007, when it issued the latest invoice to RMST. Mem. Opp'n Mot. Dismiss at 7.

Whether the statute of limitations has run in this case hinges on a number of factual issues that cannot be resolved on the limited, pre-discovery record presently before the court. As discussed above, it is plausible that the draft report constituted adequate performance under the contract to give rise to a legal right to payment, in which case the statute of limitations in this case may have expired. It is also possible, however, that Marmargar's furnishing of a draft report was not adequate performance under the contract that would entitle it to relief, an argument the Plaintiffs themselves advance. Mem. Supp. Mot. Dismiss at 5–6. If that were the case, the statute of limitations may not have begun to run until the final report was delivered—a date neither party has alleged.

The Counterclaim simply does not set forth, on its face, the facts necessary to conclude that the statute of limitations bars Marmargar's claim. The court does not have sufficient information about the amount of work Marmargar performed to complete the draft report to ascertain whether the statute of limitations began to run on the date the draft report was delivered or at some later date. Accordingly, at this juncture, Marmargar's Counterclaim cannot be dismissed as time-barred. *See Goodman,* 494 F.3d at 464.[5]

---

5. Marmargar has also alleged that RMST made assurances of future payment and agreed that Marmargar would be compensated out of proceeds from the eventual sale of the *Titanic* artifacts. Answer and Countercl. ¶¶ 33, 36. Marmargar contends that this conduct equitably estops the Plaintiff from asserting a statute of limitations defense. Mem.

Opp'n Mot. Dismiss at 7–10. Thus, even if the court were able to conclude from the face of the Counterclaim that the six-year limitations period had expired, it still could not dispose of Marmargar's Counterclaim at this early stage because the factual record is not sufficiently developed for the court to rule on the equitable estoppel issue.

## B. Exclusive Rights of Representation Contract

The Plaintiffs argue that the Exclusive Rights Contract fails for indefiniteness and is lacking in consideration. Mem. Supp. Mot. Dismiss at 6–7. Marmargar has alleged enough in its Counterclaim for the court to find its claim plausible at this stage, when assuming the facts alleged as true.

### 1. Indefiniteness

The Plaintiffs urge the court to hold that the Exclusive Rights Contract's terms are so vague and undefined that the agreement cannot be enforced. Mem. Supp. Mot. Dismiss at 6–7. Marmargar alleges that it executed a Contract for Exclusive Rights and that, since 2007, pursuant to that contract, Mr. Martin has continued to act as the exclusive agent for RMST "by engaging potential buyers, providing information related to RMST's Salvor–in–Possession rights and Titanic artifacts, and verifying the authenticity and credibility of potential buyers." Answer and Countercl. at ¶ 38.

■ While it is true that a contract that is not reasonably certain in its material terms cannot be enforced, *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, 548 N.Y.S.2d 920, 548 N.E.2d 203, 206 (1989), "voiding an agreement for absence of an essential term is a step that courts should take only in rare and extreme circumstances," *Shann v. Dunk*, 84 F.3d 73, 81 (2d Cir.1996). If a court finds the parties intended to be bound, it should attempt to attach meaning to the contract, particularly where the party seeking to enforce the contract has fully or partially performed. *See, e.g.*, 1 Willi-ston on Contracts § 4:21 (citing Restatement (Second) of Contracts § 34).

■ The terms of the Exclusive Rights Contract are indeed sparse. Nonetheless, Marmargar has alleged that it has been performing under the contract since April, 2007. Taking this allegation as true, as the court must at this stage, Marmargar's continuing performance is a strong indication that the parties intended to be bound. *See id.* Ultimately, whether the terms are too indefinite to be enforced is a question better left for summary judgment or trial, at which time the court will have a more complete record from which to discern the parties' intentions at the time the Exclusive Rights Contract was negotiated and executed. For now, it is at least plausible that the parties intended to be bound by the Exclusive Rights Contract, however inartfully that intent may be expressed.

### 2. Consideration

■ The Plaintiffs next argue that the Exclusive Rights Contract is not supported by consideration. To be valid, a contract must be supported by consideration. *See, e.g., Kowalchuk v. Stroup*, 61 A.D.3d 118, 873 N.Y.S.2d 43, 46 (2009). Where an agreement otherwise reflects the parties' intent to be bound, however, a court should hesitate to find the agreement "unenforceable for lack of mutuality of obligation." *Pozament Corp. v. AES Westover, LLC*, 27 A.D.3d 1000, 812 N.Y.S.2d 154, 156 (2006). Indeed, "[a] promise may be lacking, and yet the whole writing may be instinct with an obligation, imperfectly expressed." *Wood v. Lucy, Lady Duff–Gordon*, 222 N.Y. 88, 118 N.E. 214, 214 (1917) (internal quotations omitted).[6]

---

**6.** In a twist of fate, renowned couture fashion designer Lady Duff–Gordon, who narrowly escaped the sinking bow of the *Titanic* one hundred years ago, has surfaced in this imbroglio.

■ Marmargar has made sufficient factual allegations from which the court may infer that the Exclusive Rights Contract gave Marmargar the exclusive rights of representation for the sale of the *Titanic* artifacts. The Plaintiffs, in fact, have acknowledged this purported purpose of the contract. Mem. Supp. Mot. Dismiss at 6 ("This alleged contract purports to give Marmargar the exclusive rights of representation for the sale of artifacts . . . ."). Implicit in such an agreement is the promise of Marmargar "to use reasonable efforts to bring profits and revenues into existence" through procuring a buyer for the artifacts. *See Wood*, 118 N.E. at 214. As with the Plaintiffs' indefiniteness argument, some factual development is necessary to "flesh out" the parties' intentions with respect to their intent to be bound by this agreement, before the court can conclusively dispose of this issue.

### IV. Conclusion

For the reasons set forth above, the Plaintiffs' Motion to Dismiss is **DENIED.** The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion and Order to counsel for all parties.

**IT IS SO ORDERED.**