Sotheby's, Inc. v Mao (2019 NY Slip Op 03477)





Sotheby's, Inc. v Mao


2019 NY Slip Op 03477


Decided on May 2, 2019


Appellate Division, First Department


Friedman, J.P.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 2, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

David Friedman, J.P.
Rosalyn H. Richter
Marcy L. Kahn
Jeffrey K. Oing
Peter H. Moulton, JJ.


652283/15 

[*1]Sotheby's, Inc., Plaintiff-Appellant-Respondent,
v
Christophe Mao, et al., Defendants-Respondents-Appellants.



Cross appeals from an order of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered on or about March 1, 2017, which granted defendants' motion for summary judgment dismissing the amended complaint, and denied defendants' motion for summary judgment on the counterclaim.



Stroock & Stroock & Lavan LLP, New York (Charles G. Moerdler, Ernst H. Rosenberger, Julie G. Matos and Kayley R. McGrath of counsel), and Cahill Cossu Noh & Robinson LLP, New York (John R. Cahill and Paul S. Cossu of counsel), for appellant-respondent.
Thomas, M. Lahiff, New York, for respondents-appellants.



FRIEDMAN, J.P.


The primary issue on this appeal is whether a party to a contract may, by orally waiving the other party's accrued obligation to render a performance when due under the contract (but not the performance itself), extend its time under the statute of limitations in which to sue for breach of contract without complying with General Obligations Law § 17-103. We answer this question in the negative.
This action arises out of a revolving credit agreement that provided for the financing by plaintiff Sotheby's, Inc. of the purchase by defendant Chambers Fine Art LLC (CFA) of contemporary Chinese fine art for resale. Under the agreement (entitled "Secured Revolving Loan and Sale Agreement"), dated June 29, 2006 (the 2006 agreement), CFA was permitted to [*2]draw down on the loan in increments of not more than $500,000 (up to a maximum of $5 million) from time to time as it located art to purchase. Interest was to accrue at fluctuating rates based on the prime rate announced by a designated bank in New York (the prime rate plus one percent until the entire principal amount of the loan became due; the prime rate plus four percent thereafter). The agreement contains no set repayment schedule but requires CFA, "[w]ithin two business days after [it] collect[s] and receive[s] the sale price of any item of the Property [i.e., art purchased with Sotheby's funds], . . . [to] remit the gross sale proceeds . . . to a joint [bank] account," with the remitted funds to be applied as specified in the agreement. CFA's principal, defendant Christophe Mao, executed a guarantee of all of CFA's obligations under the 2006 agreement.
The 2006 agreement provides that all of CFA's indebtedness becomes due and payable on the earlier of a specified maturity date (June 29, 2009) or "the occurrence of an Event of Default (as defined below)." The agreement further provides that, upon the occurrence of such an "Event of Default,"
"then, the outstanding principal amount of the Loan together with accrued interest thereon and all other outstanding indebtedness and obligations of [CFA] to Sotheby's shall become immediately due and payable, without presentment, demand, protest, notice of intent to accelerate, notice of acceleration or notice of any other kind, all of which are hereby waived by [CFA]" (emphasis added).
The record establishes, and it is undisputed, that an "Event of Default" within the meaning of the 2006 agreement occurred two business days after December 28, 2007 (if not before), thereby triggering CFA's obligation to repay the entire outstanding balance of the loan on that date. Specifically, on February 2, 2007, CFA purchased, with $250,000 drawn from Sotheby's, a painting by the prominent artist Liu Xiaodong entitled "Swimming Pool on the Top of the Building" (SPTB). On December 20, 2007, CFA sold SPTB for $350,000, and the sale settled on December 28, 2007. The parties agree that CFA did not remit the proceeds of the sale of SPTB to the joint bank account specified in the 2006 agreement within two business days after receiving the funds or at any time thereafter. The 2006 agreement defines the term "Event of Default" to include, inter alia, a "default in the payment of any principal of or interest on the Loan or any other amount payable by [CFA] to Sotheby's hereunder as and when the same shall become due and payable." The term "Event of Default" is defined also to include a "breach [by CFA], or fail[ure] [by CFA] to perform when due, any agreement, covenant or obligation to be performed by [CFA] pursuant hereto." Accordingly, the undisputed failure by CFA to remit the proceeds of the sale of SPTB within two business days after December 28, 2007, as required by the 2006 agreement, constituted an "Event of Default" thereunder.[FN1]
CFA's purchase of SPTB in February 2007 was the last one it made with funds provided by Sotheby's under the 2006 agreement. Thereafter, CFA neither borrowed additional funds under the agreement nor made any additional payments into the designated joint bank account. The parties have stipulated that, of the total principal amount of $2,166,000.00 that Sotheby's [*3]disbursed to CFA under the 2006 agreement, $2,142,455.70 has not been repaid.
After February 2007, the parties had intermittent communications concerning the disposition of the inventory CFA had purchased with Sotheby's funds. The financial crisis of 2008 caused a serious downturn in the market for contemporary Chinese fine art, and CFA was left holding a substantial inventory of unsold art that it had purchased with Sotheby's funds within the first year after the parties entered into the agreement. Sotheby's made no demand for repayment on June 29, 2009, the date on which, by the terms of the 2006 agreement, repayment of the loan would have become due absent any prior "Event of Default." In March 2010, Sotheby's sent Mao at CFA an email suggesting possible ways to try to dispose of the art and stating that "[t]he goal is to work our way to a position where at the end of the year we have cut the current outstanding amount significantly." Mao responded, in an email dated April 1, 2010, that he did not "see how there is any sort of outstanding debt" because, in his view at the time, "we all agreed that this arrangement would be a joint venture and not a loan from Sotheby's to [CFA]."
By letters to CFA and Mao, respectively, both dated March 8, 2011, Sotheby's demanded repayment of the full principal amount of the loan, with accrued interest. In response, CFA, through Mao, sent Sotheby's a letter, dated April 6, 2011, setting forth a "proposal to deal with the amounts claimed by Sotheby's." Mao proposed that the 2006 agreement be "replaced and extinguished" by a promissory note in the principal amount that Sotheby's had demanded ($2,142,455.70), which "amount will not be subject to interest" and would be payable in quarterly installments over five years, with the debt being secured by the art previously purchased with Sotheby's funds. As part of this proposal, Mao stated that he was also "willing to give Sotheby's a second security interest in my apartment," subject to his co-owner's consent. The proposal was never implemented.
Sotheby's commenced this action against CFA, Mao and Chambers 2010, Inc. (another entity owned by Mao) on June 25, 2015. As relevant to this appeal, Sotheby's asserts a cause of action against CFA for breach of the 2006 agreement and a cause of action against Mao for breach of his guarantee of CFA's obligations under the 2006 agreement [FN2]. Defendants' answer raised the affirmative defense of the statute of limitation and asserted a counterclaim for breach of contract. In the order appealed from, Supreme Court granted defendants' motion for summary judgment dismissing the complaint as barred by the statute of limitations, but denied defendants' motion for summary judgment on their counterclaim [FN3]. On Sotheby's appeal and defendants' cross appeal, we modify only to dismiss the counterclaim on a search of the record, and otherwise affirm.
In addressing the issue of the timeliness of Sotheby's claims, we begin by taking note of [*4]the Court of Appeals' longstanding recognition — reiterated in its recent decisions — that "the statute of limitations is not only a personal defense but also expresses a societal interest or public policy of giving repose to human affairs" (Deutsche Bank Natl. Trust Co. v Flagstar Capital Mkts., 32 NY3d 139, 151 [2018] [internal quotation marks omitted]; see also Ajdler v Province of Mendoza, __ NY3d __, 2019 NY Slip Op 02151, *4 n 6 [March 21, 2019] ["Our statute of limitations doctrine serves the objectives of finality, certainty and predictability"] [internal quotation marks and alterations omitted]). That policy, the Court further noted in Deutsche Bank, "becomes pertinent where the contract not to plead the statute [of limitations] is in form or effect a contract to extend the period as provided by statute or to postpone the time from which the period of limitations is to be computed" (32 NY3d at 152 [internal quotation marks omitted], quoting John J. Kassner & Co. v City of New York, 46 NY2d 544, 551 [1979], quoting 1961 Rep of NY Law Rev Commn at 97-98, reprinted in 1961 McKinney's Session Laws of NY at 1871).
To govern the resulting "subtle interplay . . . between the freedom to contract and New York public policy" (Deutsche Bank, 32 NY3d at 143), the legislature enacted General Obligations Law § 17-103 ("Agreements waiving the statute of limitation"), the first paragraph of which provides:
"A promise to waive, to extend, or not to plead the statute of limitation applicable to an action arising out of a contract express or implied in fact or in law, if made after the accrual of the cause of action and made, either with or without consideration, in a writing signed by the promisor or his agent is effective, according to its terms, to prevent interposition of the defense of the statute of limitation in an action or proceeding commenced within the time that would be applicable if the cause of action had arisen at the date of the promise, or within such shorter time as may be provided in the promise" (General Obligations Law § 17-103[1] [emphasis added]).
"An agreement to extend the statute of limitations that does not comply with these requirements [of § 17-103(1)] has no effect'" (Deutsche Bank, 32 NY3d at 153, quoting General Obligations Law § 17-103[3][FN4]; see also CPLR 201 ["An action . . . must be commenced within the time specified in this article unless a different time is prescribed by law or a shorter time is prescribed by written agreement," and "[n]o court shall extend the time limited by law for the commencement of an action"]).
Sotheby's causes of action against CFA for breach of the 2006 agreement and against Mao to enforce the guarantee are, of course, governed by a six-year statute of limitations (CPLR 213[2]). Under the terms of the 2006 agreement, Sotheby's became entitled to demand immediate payment of the total outstanding balance of the loan two business days after December 28, 2007, when an "Event of Default" occurred upon CFA's failure to remit the proceeds of the SPTB sale. The statute of limitations begins to run on a contractual claim for the payment of a sum of money "when the party that [is] owed money had the right to demand payment, not when it actually ma[kes] the demand" (Hahn Automotive Warehouse, Inc. v [*5]American Zurich Ins. Co., 18 NY3d 765, 771 [2012]; see also ACE Sec. Corp., Home Equity Loan Trust, Series 2006-SL2 v DB Structured Prods., Inc., 25 NY3d 581, 594 [2015] [noting that Hahn held "that breach of contract counterclaims began to run when insurers possessed the legal right to demand payment from the insured, not years later when they actually made the demand"] [internal quotation marks and brackets omitted]). Since the date two business days after December 28, 2007, was January 2, 2008 — and the parties never entered into a written agreement to waive or extend the statute of limitations in compliance with General Obligations Law § 17-103 — Sotheby's time in which to commence this action expired no later than January 2, 2014, about a year and a half before Sotheby's actually brought suit on June 25, 2015.
The foregoing notwithstanding, Sotheby's argues that it delayed the accrual of its causes of action by waiving the "Events of Default" that occurred before June 29, 2009, the date on which repayment of the loan was set to become due absent any prior defaults [FN5]. Specifically, Sotheby's claims that the record at least raises a triable issue as to whether it waived CFA's obligation to timely remit the proceeds of the SPTB sale or to make immediate repayment of the outstanding loan balance upon the occurrence of an "Event of Default" (which, as previously discussed, occurred no later than January 2, 2008)[FN6]. In this regard, Sotheby's relies on authority holding that, even if a written agreement provides (as the 2006 agreement does) that none of its provisions "may be amended, supplemented or waived other than by means of a writing signed by [the parties]," a fully performed oral modification or waiver of the terms of such an agreement [*6]may be given effect [FN7]. In none of the cases Sotheby's cites was the timeliness of the action under the statute of limitations at issue.
Sotheby's position is untenable because the present case (unlike the cases it cites) implicates, not merely a contractual no-oral-modification clause, but "[t]he public policy represented by the statute of limitations, CPLR 201, and General Obligations Law § 17-103" (Deutsche Bank, 32 NY3d at 153). To vindicate that policy, General Obligations Law § 17-103 mandates, inter alia, that a consensual extension of the statute of limitations on an already-accrued contractual claim be given effect only if the extension is set forth "in a writing signed by the promisor." Because Sotheby's fails to identify any such writing in this case, Supreme Court correctly dismissed Sotheby's amended complaint as time-barred.
To decide this appeal, we need not, and therefore do not, determine whether Sotheby's has established that (or has raised an issue as to whether) it effectively waived CFA's performance of any contractual obligation for purposes other than extending Sotheby's time in which to sue [FN8]. Even if Sotheby's conduct was otherwise sufficient to effect such a waiver, any such waiver, if not embodied in a writing signed by CFA as required by General Obligations Law § 17-103, would not be effective to delay the accrual of Sotheby's cause of action for breach or otherwise to extend the statute of limitations on that claim. Sotheby's cannot be permitted to circumvent § 17-103 by characterizing the conduct on which it relies to avoid the statutory time-bar as its own waiver of an obligation of CFA rather than as an agreement by CFA to waive or extend the statute of limitations. Whatever label is placed on the conduct, the effect Sotheby's seeks to draw from it — the extension of its time in which to commence suit — requires [*7]compliance with § 17-103.
The Court of Appeals' Hahn decision is instructive. In Hahn, the Court of Appeals held that
"any debts for which Zurich had the legal right to demand payment prior to May 2000, i.e., more than six years before the commencement of this action, are time-barred. To hold otherwise would allow Zurich to extend the statute of limitations indefinitely by simply failing to make a demand" (18 NY3d at 771 [footnote and internal quotation marks omitted]).
Here, too, Sotheby's theory that the accrual of its breach of contract claim was delayed by Sotheby's alleged waiver of CFA's obligation to remit the proceeds of the SPTB sale to the joint bank account in timely fashion — a waiver effected by nothing more than Sotheby's failure to act, as previously noted — would result in an indefinite delay of the accrual of Sotheby's claim until whatever time Sotheby's saw fit to demand payment, thereby indefinitely extending the statute of limitations. This conclusion is not changed by the 2006 agreement's backstop maturity date of June 29, 2009, since Sotheby's continuing inaction until March 2011 (when it finally demanded payment) could similarly be said to have waived CFA's obligation to make payment on June 29, 2009 [FN9]. In any event, under General Obligations Law § 17-103, even an affirmative agreement by the parties to waive CFA's obligation to make timely remittance of sale proceeds cannot have the effect of extending Sotheby's time in which to sue unless memorialized in a writing signed by CFA.[FN10]
We reject Sotheby's argument that Mao's aforementioned letter of April 6, 2011, which offered a "proposal to deal with the amounts claimed by Sotheby's," served to extend the limitation period pursuant to General Obligations Law § 17-101. The letter was, in effect, a settlement offer conditioned on Sotheby's acceptance of additional terms, a condition that was never satisfied (see National Westminster Bank USA v Petito, 202 AD2d 193, 195 [1st Dept 1994]). We also find unavailing Sotheby's arguments that defendants are judicially or equitably estopped to invoke the statute of limitations as a defense.
Finally, as previously noted, the order under review also denied defendants' motion for summary judgment on their counterclaim for breach of the 2006 agreement on the ground that CFA itself failed to perform. This determination, which defendants challenge on their cross [*8]appeal, was correct (see Sun Gold, Corp. v Stillman, 95 AD3d 668 [1st Dept 2012]). Because CFA's own breaches, as established by the record, render the counterclaim without merit, we modify the order appealed from, upon a search of the record, to grant Sotheby's summary judgment dismissing the counterclaim.
Accordingly, the order of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered on or about March 1, 2017, which granted defendants' motion for summary judgment dismissing the amended complaint, and denied defendants' motion for summary judgment on the counterclaim, should be modified, on the law, upon a search of the record, to grant plaintiff summary judgment dismissing the counterclaim, and otherwise affirmed, without costs. The Clerk is directed to enter judgment accordingly.
All concur.
Order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered on or about March 1, 2017, modified, on the law, upon a search of the record, to grant plaintiff summary judgment dismissing the counterclaim, and otherwise affirmed, without costs. The Clerk is directed to enter judgment accordingly.
Opinion by Friedman, J.P. All concur.
Friedman, J.P., Richter, Kahn, Oing, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MAY 2, 2019
CLERK



Footnotes

Footnote 1:There is evidence that CFA committed other breaches of the 2006 agreement (such as failing to store the art as required by the agreement) before June 29, 2009. However, as it is plain that an "Event of Default" occurred with respect to the failure to remit the funds from the sale of SPTB, consideration of the other possible "Events of Default" is unnecessary to the determination of this appeal.

Footnote 2:As limited by the briefs, Sotheby's appeal does not challenge Supreme Court's dismissal of its other causes of action.

Footnote 3:In defendants' notice of cross appeal, and in both sides' respective appellate briefs, Supreme Court's order is described as having dismissed the counterclaim. However, the order states only that "summary judgment as to [defendants'] counterclaim is denied." Similarly, in the decision it rendered on the record, the court stated, "I am denying summary judgment on the counterclaim." We note that Sotheby's, in its notice of motion, did not request summary judgment dismissing the counterclaim.

Footnote 4:General Obligations Law § 17-103(3) provides in full: "A promise to waive, to extend or not to plead the statute of limitation has no effect to extend the time limited by statute for commencement of an action or proceeding for any greater time or in any other manner than that provided in this section, or unless made as provided in this section."

Footnote 5:If Sotheby's causes of action had accrued on June 29, 2009, the commencement of this action on June 25, 2015, would have been timely.

Footnote 6:There is, at best, weak support in the record for Sotheby's claim to have waived the "Event of Default" arising from CFA's failure to remit the proceeds of the SPTB sale. In his affidavit, a Sotheby's executive (who does not claim to have personal knowledge of the matter) makes the conclusory assertion that Sotheby's "waived (as it was entitled to do in its sole discretion) [CFA's] . . . failure to remit payment from the sale of [SPTB] to Sotheby's bank account within two business days." In support of this assertion, the executive cites to the following brief excerpt from Mao's deposition:
"Q. You say you also chased Sotheby's about the [SPTB] payment?
"A. Yes, the settlement.
"Q. And Sotheby's never sued you or demanded the payment?
"A. Never."

Footnote 7:Sotheby's cites the following cases for this proposition: Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P. (7 NY3d 96 [2006]); Rose v Spa Realty Assoc. (42 NY2d 338 [1977]); Estate of Kingston v Kingston Farms Partnership (130 AD3d 1464 [4th Dept 2015]); Aiello v Burns Intl. Sec. Servs. Corp. (110 AD3d 234 [1st Dept 2013]); Taylor v Blaylock & Partners (240 AD2d 289 [1st Dept 1997]); Marine Midland Bank v Midstate Lbr. Co. (79 AD2d 783 [3d Dept 1980]); All-Year Golf v Products Invs. Corp. (34 AD2d 246 [4th Dept 1970], lv denied 27 NY2d 485 [1970]).

Footnote 8:We note that Sotheby's present position that it effected waivers as to any of CFA's breaches is contradicted by its March 2011 demand letters to CFA and Mao, in which it stated that "no delay, failure or omission by us to exercise any right under the Agreement or otherwise, shall impair any right available to us under the Agreement or otherwise, or operate as a waiver of any such right." Sotheby's present position is also contradicted by its position at the commencement of this action. In its amended complaint, dated August 18, 2015, Sotheby's alleged that the 2006 agreement "has never been modified by a writing signed by both Sotheby's and [CFA] as required." Similarly, in an affirmation submitted the previous month, Sotheby's counsel averred that Sotheby's had afforded defendants "years of courtesy . . . (none of which can constitute a waiver or an amendment to the Loan Agreement which, per § 13, must be in a signed writing)."

Footnote 9:In fact, Sotheby's takes the position in its appellate brief that it also waived the June 29, 2009 maturity date, stating: "Indeed, though by its terms the Loan Agreement fixed June 29, 2009 as the maturity date of the several loans, Sotheby's agreed not to demand payment at that time (and until March 8, 2011)." By Sotheby's reasoning, the alleged waiver of the June 2009 due date would also serve to delay accrual of the cause of action, thereby opening the door to indefinite extension of the statute of limitations — a result plainly impermissible under Hahn.

Footnote 10:Hahn cannot be distinguished on the ground that the failure to demand payment in that case was the result of "inadvertence" (id. at 771) while here the delay was intentional. Mere delay, whether intentional or inadvertent, cannot serve to extend the statute of limitations. On its face, General Obligations Law § 17-103 governs intentional conduct.